IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| VICTOR R. BRADLEY,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>SCOTT CROWTHER, RICHARD GARDEN, DOE PRISON MEDICAL PROVIDERS (1-10), DOE DIALYSIS TECHNICIANS (11-12), ARSALAN HABIB, DOE UNIVERSITY OF UTAH HEALTHCARE MEDICAL PROVIDERS (13-20),<br><br>　　　　　　　　Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS RICHARD GARDEN AND SCOTT CROWTHER'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:17-CV-93 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants Richard Garden and Scott Crowther's (collectively "Defendants") Motion for Summary Judgment Limited to the Issue of Exhaustion of Administrative Remedies. For the reasons set forth below, the Court will grant Defendants' Motion.

I. BACKGROUND

The facts relevant to this Motion are as follows. Plaintiff Victor R. Bradley ("Plaintiff") pleaded guilty to a first degree felony in 1984 and was subsequently placed at Utah State Prison ("USP"), where he is currently an inmate. Plaintiff began receiving dialysis treatments at some point during his incarceration at USP. These dialysis treatments are critical to Plaintiff's health.

As a result of alleged misconduct and/or miscommunications by the defendants in this action, Plaintiff and several other USP inmates did not receive their scheduled dialysis treatments

1

at USP on April 3, 2015, and on April 4, 2015. The missed dialysis treatments allegedly caused Plaintiff to suffer three strokes and a heart attack.

USP has a written internal grievance policy in place to assist inmates in seeking resolution to problems that arise during their incarceration. The grievance policy is made available to all inmates regardless of status or classification,[1] and the procedures "do not set any limit on existing administrative discretion or powers."[2] There are three levels of the internal grievance process. At Level One, the inmate is directed to obtain, complete, and submit the requisite form "[w]ithin seven working days of an incident or seven working days from the time the inmate knew or should have known about a grievable incident."[3] The facility or bureau responsible for addressing the grievance then has twenty-one working days from the date the grievance is received to respond.

If resolution fails, the inmate initiates Level Two proceedings in which he has five working days to complete and submit the requisite form to be reviewed by the Warden. The Warden then has twenty-one working days from the date of receipt to provide a written response to the inmate.[4] If the inmate is unsatisfied with the Warden's decision, he is then directed to appeal the decision to the department's Hearing Office within five working days, which initiates Level Three proceedings.[5] The Hearing Office then has twenty-one working days from the date it receives the appeal to assign a hearing officer, review the grievance, and provide a written

---

[1] Docket No. 20 Ex. 1, at 4
[2] *Id.* at 5.
[3] *Id.* at 11.
[4] *Id.* at 11–12.
[5] *Id.* at 12.

response to the inmate or schedule a hearing.[6] "There is no further administrative appeal from the Hearing Office level. The Level Three decision is final."[7] The written policy states that "it is the policy of the Department that the inmate grievance system is not required as a matter of constitutional law, but is provided as an aid to inmates and DIO management to resolve conflict and problems."[8]

The parties do not dispute that Plaintiff complied with the procedures of Levels One and Two. However, after receiving unfavorable written responses at each of the first two levels, Plaintiff failed to file an appeal of the Warden's decision to the Hearing Office to initiate the Level Three proceedings. Defendants argue that this failure to exhaust all available administrative remedies is grounds for dismissal.

## II. DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] Here, the facts relevant to the resolution of this matter are not in dispute. The issue before the Court is limited to whether Plaintiff's failure to exhaust his administrative remedies through USP's internal grievance procedures merits granting summary judgment in favor of Defendants as a matter of law and dismissing the case.

---

[6] *Id.*
[7] *Id.* at 13.
[8] *Id.* at 2.
[9] Fed. R. Civ. P. 56(a).

The Prison Litigation Reform Act ("PLRA")[10] states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[11]

The Supreme Court has emphasized that the exhaustion provision of the PLRA is mandatory and should be broadly construed.

> Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All "available" remedies must now be exhausted; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. And unlike the previous provision, which encompassed only § 1983 suits, exhaustion is now required for all "actions brought with respect to prison conditions," whether under § 1983 or "any other Federal law."[12]

Plaintiff puts forth three arguments as to why this case should not be dismissed for his failure to exhaust all administrative remedies available to him under USP's internal grievance policy. First, Plaintiff argues that a section of USP's written policy "essentially nullifies the requirements of the PLRA."[13] Second, Plaintiff argues the PLRA's exhaustion requirement is applicable only to grievances concerning "prison conditions," and Plaintiff's grievance is about matters unrelated to "prison conditions."[14] Finally, Plaintiff argues that the exhaustion

---

[10] 42 U.S.C. § 1997e.

[11] *Id.* at § 1997e(a).

[12] *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal citations omitted).

[13] Docket No. 28, at 3.

[14] *Id.* at 4–5.

requirement of the PLRA does not apply to him because USP was not capable of providing Plaintiff with a "sensible remedy."[15] Each of these arguments fail.

   a. *USP's written policy does not nullify the PLRA*

USP's written policy states, "it is the policy of the Department that the inmate grievance system is not required as a matter of constitutional law, but is provided as an aid to inmates and DIO management to resolve conflict and problems."[16] Plaintiff argues this provision nullifies the PLRA and excuses him from the exhaustion requirement. This argument fails for two reasons.

First, whether or not USP considers its grievance policy to be mandatory is irrelevant in light of the language of § 1997e(a). The PLRA states that a prisoner must exhaust all administrative remedies "available" to them within the prison system before bringing the matter to court. Where the statutory construction is at issue, the Court begins "by analyzing the statutory language, assuming that the ordinary meaning of that language accurately expresses the legislative purpose."[17] In interpreting the PLRA, the Supreme Court has held that "the ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'"[18]

USP's written internal grievance policy states that the grievance procedures are available to all inmates incarcerated at USP.[19] Plaintiff does not dispute that the policy is available.

---

[15] *Id.* at 6.

[16] *Id.* at 2.

[17] *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) (internal quotation marks omitted).

[18] *Ross v. Blake*, 136 S.Ct 1850, 1858 (2016) (quoting *Booth v. Chruner*, 532 U.S. 731, 737–38 (2001)).

[19] Docket No. 20 Ex. 1, at 4.

5

Notably, Plaintiff took advantage of the first two levels of USP's internal grievance procedures prior to filing this lawsuit. Therefore, it is not relevant that USP does not consider its grievance policy to be constitutionally mandated. The fact that the procedures were available to Plaintiff means he must have completed each of the three levels of USP's internal grievance policy to fully comply with the exhaustion requirement of the PLRA.

Second, the PLRA is a federal statute enacted by Congress for the purpose of reducing the quantity of prisoner litigation cases being filed in federal court.[20] To suggest USP's internal policy could legally "nullify" a mandatory provision of a federal statute lacks merit.

If Plaintiff was purposely misled by USP officials to believe he did not need to conform with the exhaustion requirement of the PLRA in order to pursue his claims in federal court, either by reference to the written internal grievance policy or otherwise, Plaintiff may be able to circumvent the exhaustion requirement.[21] However, no such facts have been alleged here.

b. *Plaintiff's grievance is regarding "prison conditions" for purposes of the PLRA*

Plaintiff next argues that the language of § 1997e(a), requiring exhaustion only for complaints relating to "prison conditions," does not apply because his claims are about USP's failure to provide necessary medical treatment, which, he argues, is not related to "prison conditions."

In *Porter v. Nussle* the Supreme Court interpreted the term "prison conditions" broadly, holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life,

---

[20] *See Porter*, 534 U.S. at 524–25.

[21] *See Ross*, 136 S. Ct., at 1858 (holding that "§ 1997e(a) poses no bar" where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation").

6

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[22] The Supreme Court found this interpretation was consistent with Congress' purpose in enacting section 1997e(a).

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.[23]

Given the Supreme Court's broad interpretation of the term "prison conditions," Plaintiff's argument that failure to provide medical treatment is not meant to be encompassed by section 1997e(a) must fail. Plaintiff's Complaint alleges his rights were violated by USP officials and others who: failed to implement adequate policies and procedures, failed to adequately train or supervise employees on those procedures, failed to intervene to prevent Plaintiff's injuries, and were deliberately indifferent to Plaintiff's serious medical needs. Plaintiff argues that, as a result of these alleged failures, Plaintiff did not receive his necessary dialysis treatments for two consecutive days as scheduled and suffered severe health problems.[24] This grievance squarely falls under the Supreme Court's definition of "prison conditions." Plaintiff, as an aggrieved inmate, brought suit regarding the "general circumstances" of the prison, specifically the policies and procedures in place at USP, as well as "a particular episode" of misconduct, specifically, a

---

[22] *Porter*, 534 U.S. at 532.

[23] *Id.* at 524–25 (internal citations and quotation marks omitted)

[24] *See* Docket No. 2, at 8–17.

7

"wrong" which resulted in Plaintiff failing to receive necessary dialysis treatments while incarcerated.

Notably, the Tenth Circuit has upheld dismissal where a prisoner failed to exhaust all administrative remedies prior to suing the prison in federal court for its failure to provide proper medical treatment.[25] Plaintiff does not cite to a single authority that would support his argument that a prison's failure to provide necessary medical treatment would not fall under the Supreme Court's sweeping interpretation of "prison conditions."

Plaintiff argues that reliance on the *Porter* decision is improper because the Court in *Porter* held, for purposes of the PLRA, that the term "prison conditions" included incidents of "excessive force and guard brutality." Plaintiff is correct in his factual assessment of the case. However, the Supreme Court did not limit its holding to excessive force cases, but instead offered a clarification of the term "prison conditions" as is discussed above.

Plaintiff also argues that his case cannot amount to "prison conditions" because this is not the type of "overtaxing" case Congress meant to avoid in enacting section 1997e(a). This argument is also inconsistent with Supreme Court precedent. In *Ross v. Blake*, the Supreme Court specifically rejected the circuit court's finding that "there are certain 'special circumstances in which, though administrative remedies may have been available, the prisoner's

---

[25] *See Ross v. Cty. of Bernalillo*, 365 F.3d 1181, 1187–88 (10th Cir. 2004) *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *Price v. Shinn*, 178 F. App'x 803, 804 (10th Cir. 2006). Though the Tenth Circuit did not explicitly address the issue of whether the complaint regarding lack of necessary medical treatment amounted to a complaint of "prison conditions" in these cases, the Circuit Court must have concluded as much given that the case was dismissed for the plaintiff's failure to exhaust his available administrative remedies.

failure to comply with administrative procedural requirements may have been justified.'"[26] The Court reiterated that, aside from the qualifier that remedies must be available, "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account."[27] Therefore, the Court cannot take into consideration the potential legitimacy of Plaintiff's underlying claims to excuse him from complying with the exhaustion requirement of the PLRA. Plaintiff's complaint is related to the "prison conditions" at USP for purposes of the PLRA and Plaintiff must have exhausted all administrative remedies prior to filing a suit in federal court.

   c. *The administrative remedies provided by USP were "available" for purposes of the PLRA.*

Plaintiff argues that in order for the exhaustion requirement to apply, USP needed to be able to provide an "available remedy." Plaintiff quotes the *Ross* decision in support of his argument, which states, "[t]he modifier available requires the possibility of some relief. When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy."[28] Plaintiff argues USP was not "capable of providing [Plaintiff] with a sensible remedy in this circumstance, even in principle."[29]

In *Ross*, the Supreme Court recognized that the only limit to the exhaustion requirement is "the one baked into its text: An inmate need exhaust only such administrative remedies as are

---

[26] 136 S. Ct. at 1856.

[27] *Id.*

[28] *Id.* at 1859 (quotation marks omitted).

[29] Docket No. 28, at 6.

9

'available.'"[30] The Supreme Court further enumerated "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."[31] First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."[32] Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it."[33] "And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."[34]

Plaintiff has not alleged facts supporting any of these circumstances, which might justify a conclusion that USP did not have an actual remedy available to Plaintiff. As discussed, USP's internal grievance policy is available to all inmates, including Plaintiff. Plaintiff made use of this policy—though he did not exhaust it—and the policy as written provides that USP has broad discretion to remedy any given grievance. Plaintiff's final argument that no remedy was available therefore fails. Plaintiff must have complied with the PLRA's exhaustion requirement prior to bringing suit in this Court.

---

[30] 136 S. Ct. at 1862.

[31] *Id.* at 1859.

[32] *Id.*

[33] *Id.*

[34] *Id.* at 1860.

Based on the foregoing analysis, the Court will grant Defendants' Motion for Summary Judgment.[35] Defendants request that Plaintiff's case be dismissed with prejudice, however the relevant case law states that failure to exhaust administrative remedies under the PLRA should result in dismissal without prejudice. Therefore, because the PLRA requires dismissal of claims not exhausted at the administrative level as against both prison officials and their contractors,[36] the court will dismiss each of Plaintiff's claims against all defendants without prejudice.

### III. CONCLUSION

It is therefore

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 21) is GRANTED.

DATED this 27th day of September, 2017.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[35] *See Ross*, 365 F.3d at 1183–84.

[36] *See Fontenot v. Glob. Expertise In Outsourcing,* 232 F. App'x 393, 394 (5th Cir. 2007) (finding prisoner must exhaust administrative remedies under the PLRA prior to bringing suit against prison contractor); *Martinez v. Guadalupe Cty.*, 200 F. Supp. 3d 1216, 1261 (D.N.M. 2016) (holding the PLRA's exhaustion requirement applied to prisoner's claims against the contractor providing medical services to the prison and the physician employed by the contractor); *Chandler v. C.C.S. Med. Servs.*, No. 2:16-CV-22-CR-JMC, 2016 WL 8453025, at *2 (D. Vt. July 11, 2016), *report and recommendation adopted*, No. 2:16-CV-22, 2016 WL 4491763 (D. Vt. Aug. 26, 2016) ("First, it is well established that the PLRA applies to prison contractors like CCS.") (collecting cases).